John W. Leardi
Nicole P. Allocca
BUTTACI LEARDI & WERNER LLC
212 Carnegie Center, Suite 202
Princeton, New Jersey 08540
609-799-5150

Leslie Howard
Michael Fried
COHEN HOWARD, LLP
766 Shrewsbury Ave., Suite 200
Tinton Falls, NJ 07724
732-747-5202

*Attorneys for Plaintiff*
*Jonathan Hott, M.D.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JONATHAN HOTT, M.D., | : |
| *Plaintiff,* | : No.: 21-cv-02421-LLS |
| - v. - | : |
| MULTIPLAN, INC., and CIGNA HEALTH AND LIFE INSURANCE COMPANY, | : **FIRST AMENDED COMPLAINT** |
| *Defendants.* | : |

Plaintiff Jonathan Hott, M.D. ("Dr. Hott"), through his undersigned counsel and by way of Complaint against Defendants MultiPlan, Inc. ("MultiPlan") and Cigna Health and Life Insurance Company ("Cigna") hereby alleges as follows:

1.      This action largely stems from a reimbursement dispute between a medical practice on the one hand, and a participating provider organization network administrator and its third-party payer clients on the other. The dispute principally arises from the relationships and obligations created by the MultiPlan Participating Professional Group Agreement entered by Dr. Hott and MultiPlan in 2011 (the "Provider Agreement"). The Provider Agreement entitles Dr. Hott—who does not contract directly with payers such as Cigna —to be paid at the "Contract Rate" delineated in the Provider Agreement when treating a patient whose health benefit plan elects to

participate in MultiPlan's Network Savings Program. However, when it came time to pay the Plaintiff for services rendered, Defendants made grossly insufficient, partial payments contrary to their duties under (a) the Provider Agreement or (b) implied-in-fact agreements established over the parties' course of dealings and industry standards. This action is brought to hold Defendants accountable for their failure to make payment in accordance with the forgoing contracts.

## THE PARTIES

**A.      Plaintiff Dr. Hott.**

2.      Dr. is a board-certified neurosurgery spine specialist in Phoenix, AZ, treating injuries, diseases, and disorders of the spine and brain. Dr. Hott received his medical degree from Wayne State University School of Medicine in Detroit, Michigan. Thereafter, Dr. Hott completed an internship at the Good Samaritan Regional Medical Center and a neurological surgery residency at Barrow Neurological Institute, both in Phoenix, Arizona. Dr. Hott then completed his complex spinal surgery fellowship in the Department of Neurosurgery at the Barrow Neurological Institute. Dr. Hott maintains an office in Arizona, including an office located at 9225 N. 3'd Street #100 Phoenix, AZ 85020.

**B.      Defendant MultiPlan.**

3.      MultiPlan is a New York corporation with its principal place of business at 115 Fifth Avenue, New York, NY 10003 and a registered address of 80 State Street, Albany, New York, 12207-2543.

4.      MultiPlan, is a purported nationwide Preferred Provider Organization ("PPO") network that give insureds access to an additional choice of providers that have agreed to offer their services at a discounted rate. MultiPlan, among other things, develops and operates healthcare provider networks.

5.      MultiPlan contracts with over a 1.2 million healthcare providers, who in turn are

provided access to patients enrolled in Benefit Programs offered by MultiPlan's Clients, who include insurance companies, and Users, who include both self-funded benefits plans and individuals who enroll in a MultiPlan discount card program.

6.      Multiplan conducts business in the State of Arizona, accordingly.

**C.      Defendant Cigna.**

7.      Cigna is an operating subsidiary of Cigna Corporation with a principal place of business of Two Chestnut Place, 1601 Chestnut Street, Philadelphia, PA 19192.

8.      Cigna offers, underwrites, and administers Benefit Programs through which healthcare expenses incurred by program insureds for services and/or products covered by the Benefit Programs are reimbursed by and/or through Cigna.

9.      Cigna is licensed by the Arizona Department of Insurance and Financial Institutions ("ADIFI") to do business in the State of Arizona and conducts business in the State, accordingly.

10.      Cigna is a Client and/or User of MultiPlan as defined in the Provider Agreement.

**JURISDICTION AND VENUE**

11.      This Court has subject matter jurisdiction over Dr. Hott's claims under 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is brought by a citizen of Arizona (Dr. Hott) against citizens of New York (MultiPlan), Pennsylvania (Cigna).

12.      Venue is appropriate in this District because the Paragraph 9.3 of the Provider Agreement states that "[v]enue of any dispute litigated between the parties shall be in Federal court in the state and county of residence of the defendant." MultiPlan is a resident of this District.

13.      This Court has personal jurisdiction over the remaining Defendants because both Cigna has substantial contacts with, and regularly conduct business in this District.

14.      This Court's construction of the Provider Agreement, and the parties' respective

obligations thereunder, shall be governed by Arizona law, as Paragraph 9.3 of the Provider Agreement indicates it is to be constructed under Federal laws and regulations, as well as the laws of the state in which health care services are rendered hereunder. All surgical and other medical services provided by Dr. Hott relative to its claims here were provided in Arizona.

### MULTIPLAN CONTRACT RATES AND SHARED SAVINGS FEES

15.     Cigna is in the business of administering health plans. In that role, Cigna receives, reviews, and processes benefits claims for services rendered to members enrolled in those plans by medical service providers ("providers").

16.     In addition to underwriting traditional health insurance or "fully insured" health plans, many of Cigna's plans are "self-funded" where the plan sponsor is responsible for payment of claims from its own funds and those contributed by employees. For those plans, Cigna acts as a third-party fiduciary and claims administrator.

17.     Providers are largely paid by health plan administrators like Cigna, based on whether they have a participating provider agreement, which will drive their classification as either in-network ("INET") or out-of-network ("ONET").

18.     An ONET, or non-participating provider, typically charges for services at a usual, customary, and reasonable ("UCR") rate, which is determined by assessing the charge of similar providers, offering a similar service, in the same geographic region. If a patient's health benefit plan fails to pay the full rate, an ONET provider is permitted, and sometimes required, to bill the patient for the outstanding balance.

19.     Contrastingly, an INET, or participating, provider is reimbursed for services covered by a patient's health benefit plan based on rates set forth in the agreement between the provider and the health insurance company. Under this agreement, the health plan administrator encourages its insured to utilize contracted INET providers, and they usually prohibit a provider

from balance billing the patient.

20.     Defendant MultiPlan offers a so-called Complementary Provider Network which health plan administrators use as a secondary network to their preferred provider network. In achieving this end, MultiPlan contracts with ONET providers on one hand, and health plan administrators on the other hand to: (a) offer providers access to a broader patient base; and (b) offer health plan administrators and their members discounted rates from the UCR rates charged by providers that are otherwise ONET.

21.     In consideration for joining MultiPlan's Complementary Provider Network, and similar to INET providers, ONET providers discount their UCR charges. This discount is what defines the "Contract Rate," paid to providers for services provided to patients whose health benefit plans participate in the MultiPlan's Complementary Provider Network.

22.     Notably, when a health plan administrator such as Cigna contracts with MultiPlan to access its Complementary Provider Network and the Contract Rate payable to ONET providers thereunder, not every one of the plans they administer are given access MultiPlan's Complementary Provider Network, i.e., not every one of Cigna's plans participate in MultiPlan's Complementary Provider Network. Rather, plan sponsors choose whether or not their plan members may access MultiPlan's Complementary Provider Network during the plan enrollment or plan onboarding process.

23.     Plans that participate in MultiPlan's Complementary Provider Network can be identified by viewing the insurance card issued to members of that plan, and specifically through the placement of the MultiPlan or some other related logo on that member's insurance card. This lets the member, and the providers from whom they seek services, know that the member's health plan participates in MultiPlan's Complementary Provider Network. In addition, like any other

network plan, the Complementary Provider is typically listed on the Multiplan website affirming their participation in the Complementary Provider Network.

24.     In exchange for accessing the Contract Rate for services rendered by providers enrolled in MultiPlan's Complementary Provider Network, Cigna receives two significant financial incentives, depending on the type of benefit plan in issue.

25.     For fully-insured plans, for which Cigna is responsible to pay claims directly, the principal benefit of accessing the Complementary Provider Network is the savings associated with paying providers the discounted Contracted Rates, as opposed to their UCR charges, and eliminating the prospect of any balance bill to the member, just like an INET provider.

26.     For self-insured plans, Cigna is typically paid a "Shared Savings Fee" by their self-insured clients whereby those self-insured clients pay Cigna a percentage of the "delta" between the provider's UCR charges and the amount ultimately paid on the claims in question; which, of course, for health plans accessing MultiPlan's Complementary Provider Network should be the Contracted Rates.

27.     For claims Cigna administers for its self-funded employer clients, there is a direct financial incentive for Cigna to pay ONET providers as little as possible, irrespective of any obligation to pay Contracted Rates, because the less Cigna pays on these claims, the more they charge their self-funded clients in Shared Savings Fees.

28.     By avoiding paying providers the Contract Rate under the Provider Agreement, Cigna makes more in Shared Savings Fees by keeping funds that belong to the provider under the terms of the Provider Agreement. Cigna interferes with the Provider agreement by enriching itself by withholding these payments at the expense of the provider and ultimately, the member.

## THE PROVIDER AGREEMENT

29.     In July 2012, MultiPlan solicited and induced Dr. Hott to join its participating

6

provider network and to agree to accept a discount payment, based Dr. Hott's billed UCR charges for surgical and other related medical services rendered to Dr. Hott's patients enrolled in "Benefit Programs" offered by MultiPlan's "Clients" and "Users," including, *inter alia*, Cigna.

30.    Under the Provider Agreement, MultiPlan represented to Dr. Hott that its Clients and Users would pay Contract Rate to Dr. Hott for surgical and other related medical services rendered to Dr. Hott's patients enrolled in Benefit Programs underwritten and/or administered by Cigna when any such patient accesses the MultiPlan's Complementary Provider Network.

31.    Paragraph 1.14 of the Provider Agreement states that the MultiPlan's Complementary Provider Network logo is identified on a patient's insurance card.

32.    Dr. Hott is a Participating Professional as defined under Paragraph 1.13 of the Provider Agreement, which states Dr. Hott is bound to provide services pursuant to the Provider Agreement when presented with a patient participating in the MultiPlan's Complementary Provider Network. Paragraph 3.4 compels a Participating Professional to use all reasonable efforts to accept all Participants for treatment.

33.    Under Exhibit D Paragraph 2.1 of the Provider Agreement, Dr. Hott's Contract Rate under the Provider Agreement is 80% of his billed charges.

34.    Under Paragraph 4.3 of the Provider Agreement, MultiPlan warranted that "it has entered into agreements with Clients that specify that the right to access the Network, including access to the Contract Rate, shall be subject to the terms of this Agreement."

35.    Under Paragraph 4.7 of the Provider Agreement, MultiPlan warranted that it "will require Clients and its Users to use the Contract Rate agreed to in this Agreement solely for Covered Services rendered to Participants covered under a Program which utilizes the Network."

36.    Under Paragraph 5.4 of the Provider Agreement, Participating Professionals cannot

balance bill the patient beyond the patient's Deductible and/or Co-insurance in exchange for payment of the Contract Rate.

## DR. HOTT'S COURSE OF DEALING
## WITH CIGNA

37.     Cigna engaged in representations, correspondence, and conduct surrounding the participation of the health benefit plans it administers in MultiPlan's Complementary Provider Network that would lead a reasonable healthcare provider, such as Dr. Hott, to believe that they had entered into implied-in-fact contracts to honor the Contract Rate when services were rendered by Dr. Hott to patients presenting with Cigna insurance cards bearing the MultiPlan logo.

38.     As per the terms of the Provider Agreement, specifically Paragraph 1.14, Dr. Hott could and did reasonably expect to be paid at the contracted MultiPlan rate when patients' insurance cards featured the MultiPlan logo.

39.     These expectations of payment are further established by Cigna's conduct through a long and consistent course of dealing with Dr. Hott. This conduct viewed by a reasonable person in the relevant trade, i.e., by a member of the MultiPlan's Complementary Provider Network providing ONET services to patients enrolled in health benefit plans administered by Cigna, clearly revealed a promise by Cigna to pay the Contract Rate when services were rendered by Dr. Hott to patients presenting with Cigna insurance cards bearing the MultiPlan or a related logo.

40.     Dr. Hott has an established course of dealing with Cigna health benefit plans that bear the MultiPlan logo. Specifically, when a plan member's card has the MultiPlan logo, Cigna has, before, during, and after the relevant dates of service at issue in this lawsuit, compensated Dr. Hott at the Contract Rate.

41.     The earliest date of service at issue in this action surrounding Cigna's claims for benefits is January 14, 2015.

42.     Prior to the earliest date at issue here, Cigna had established a course of dealing with Dr. Hott whereby Cigna would pay the Contracted Rates when services were rendered by Dr. Hott to patients presenting with Cigna insurance cards bearing the MultiPlan or a related logo.

43.     Examples of this course of dealing include claim payments made by Cigna to Dr. Hott at the Contract Rate for services provided to patients other than those whose claims are in issue here, which patients presented to Dr. Hott with insurance cards bearing the MultiPlan or a related logo in 2012 on September 7, 8, October 9, and November 29; in 2013 on February 18, 19, May 20, 21, June 4, 5, August 19, October 9, 27, 30, and November 5; in 2014 on February 27, April 21, 29, May 5, 28, 29, July 2, 4, and August 15.

44.     This course of dealing between Cigna and Dr. Hott continued during the timeframe that the claims in issue in this case were underpaid. For example, Cigna paid Dr. Hott the Contract Rate for services provided to patients other than those whose claims are in issue here, which patients all presented to Dr. Hott with insurance cards bearing the MultiPlan or a related logo on March 19, 2018, May 30, 2017 and May 7, 2018.

45.     The EOBs from the May 30, 2017 and May 7, 2018 dates of service, issued by Cigna to both Dr. Hott and the underlying Cigna member stated; "HEALTHCARE PROFESSIONAL: DO NOT BILL THE PATIENT FOR THE MULTIPLAN DISCOUNT THROUGH MULTIPLAN."

46.     The Provider Portal Pricing Summary from the March 19, 2018 date of service states that the claim was; "Priced using the MultiPlan Network and the following provider; Jonathan S. Hott, MD." Again, expressly acknowledging the Provider Agreement and its terms between MultiPlan and Dr. Hott.

47.     This pattern of dealing between Cigna on the one hand and Dr. Hott on the other is

clear: when Dr. Hott renders service for patients whose plans are contracted with the MultiPlan's Complementary Provider Network (as indicated on their insurance card), Cigna reimburses Dr. Hott at the Contract Rate.

48.     This conduct is further illustrated by the EOBs and other pricing summaries from Cigna, which acknowledge the existence of the MultiPlan Contract Rate in assessing its obligations in determining the relevant pricing information for the services provided.

49.     A reasonable healthcare provider would consider this course of conduct to indicate an implicit promise to pay the Contract Rate, especially considering that Cigna's conduct was consistent with the Provider Agreement that Dr. Hott had with MultiPlan. The language in the EOBs from Cigna to Dr. Hott and its patients, along with the affirmative act of consistently and repeatedly paying Dr. Hott the Contract Rate over a period of several years confirm as much.

50.     Considering the consistent course of dealing that Cigna engaged in regarding the payment of claims for insureds whose cards featured the MultiPlan logo, Dr. Hott reasonably relied upon the conduct of the health plan administrators, i.e., Cigna, as a promise to pay the contracted rate in future dealings.

51.     Another example of conduct on the part of Cigna that reveals a promise to pay to Dr. Hott, is illustrated by the marketing and promotional materials that have been widely circulated and have made available for public viewing on its website.

52.     Cigna's website states that "if the MultiPlan Savings Program logo appears on your Cigna ID card, you may be eligible to receive discounts when using an ONET, non-participating health care professional or facility that participates in the Network Savings Program."

53.     Dr. Hott is a participating health care professional in the MultiPlan Network Savings Program, and this representation from Cigna's website mirrors the billing remarks

provided on Cigna's EOB's for MultiPlan patients which state: "DO NOT BILL THE PATIENT FOR THE MULTIPAN DISCOUNT THROUGH MULTIPLAN."  Specifically, the remark is stating that Network Saving Providers are contractually obligated from balance billing the patient for the excess monies remaining between the providers' UCR charges and the agreed discount rate.

54.     Cigna used its participation in the MultiPlan's Complementary Provider Network as a marketing tool to enhance its offered benefits. This is, of course, with the intention of inducing consumers and self-funded plan sponsors to purchase health coverage or claim administration from Cigna to gain access to specialists, like Dr. Hott, who would otherwise be ONET.

55.     Not only does the MultiPlan content published on Cigna's websites further demonstrate a course of dealing with Dr. Hott and other similarly situated ONET providers who contract with MultiPlan, but it also illustrates how Cigna promoted its access to MultiPlan providers like Dr. Hott to enrich itself by increasing revenues.

56.     This agreement is further solidified by MultiPlan's website, where it answers the FAQ '[w]hy is a MultiPlan log on my insurance ID card?" by explaining that "[y]our health plan is most likely utilizing the MultiPlan's Complementary Provider Network to give you access to an additional choice of providers that have agreed to offer a discount for service."

57.     The MultiPlan Provider Agreement benefited Cigna in their administration of self-funded employer claims, like the claims at issue in this case, because Cigna would collect the Shared Savings Fee from their self-funded client. However, by disregarding the Contract Rate entirely, Cigna further enriched itself, and interefered with the Provier Agreement, by "negotiating" a far lower rate paid to providers in the Complementary Provider Network, and in turn, keeping a massive portion of the provider's contracted payment while leaving the member with a balance bill.

58.     All Defendants knew, or should have known, that Dr. Hott relied on the contract terms made by MultiPlan on behalf of its Users and Cigna's consistent course of dealing to pay at the Contract Rate for services rendered to any patient presenting to Dr. Hott with a Cigna insurance card containing the MultiPlan logo.

59.     Despite this, when Dr. Hott billed Cigna for services rendered to S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W., all patients enrolled in a Benefit Program administered by Cigna, and whose insurance cards contained the MultiPlan logo, Cigna paid Dr. Hott far less than its Contract Rate.

60.     This action seeks damages from the Defendants for their collective failure to compensate Dr. Hott pursuant to the Contract Rate established by the Provider Agreement and their consistent course of dealing with Dr. Hott with respect to professional services rendered to his patients S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W. Moreover, it is manifestly unjust that the Defendants received the benefit of Dr. Hott's participation in the MultiPlan's Complementary Provider Network and his treatment of the Cigna members in question, including but not limited to the collection and division of Shared Savings Fees by and among Cigna on the one hand, and MultiPlan on the other, without honoring Dr. Hott's Contract Rate.

61.     The amount due to Dr. Hott collectively from the Defendants is not less than $900,000.00.

## DEFENDANTS' UNDERPAYMENT OF CLAIMS

**A.     Dr. Hott's Claims and Appeals on behalf of Patient S.A.**

62.     S.A., age 49, is insured through a Benefit Program administered by Cigna on behalf of Pinnacle West Capital Corporation. The insurance card issued to S.A. by Cigna includes the MultiPlan logo, indicating that S.A.'s Benefit Program participates with MultiPlan Savings

Program.

63.     S.A. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $59,475.00 to Cigna for services rendered to S.A. and was paid $462.77, less than 1% of his billed charges.

64.     On May 15, 2018, S.A. was presented to John C. Lincoln Hospital with a diagnosis of spinal stenosis and left upper extremity radiculopathy. At this time, S.A. underwent an anterior cervical partial corpectomy with spinal cord decompression, intraoperative microscopy, discectomy with neural foraminotomies, interbody arthrodesis, interbody cage application, and segmental plate fixation performed by Dr. Hott.

65.     For these services, Dr. Hott submitted charges to Cigna in the amount of $59,475.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid Dr. Hott $462.77, less than 1% of the billed charges.

66.     Pursuant to Paragraph 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 5/15/2018 date of service on August 7, 2018; September 14, 2018; October 26, 2018; April 11, 2019; July 12, 2019; and October 8, 2019; however, to no avail.

**B.     Dr. Hott's Claims and Appeals on behalf of S.C.**

67.     S.C., age 36, is insured through a Benefit Program administered by Cigna on behalf of Liberty Mutual Insurance. The insurance card issued to S.C. by Cigna includes the MultiPlan logo, indicating that S.C.'s Benefit Program participates with the MultiPlan Savings Program.

68.     S.C. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all,

Dr. Hott submitted claims totaling $50,000 to Cigna for services rendered to S.C. and was paid $1,956.36, less than 4% of the billed charges.

69.     On May 8, 2017, S.C. was presented to the emergency room at John C. Lincoln due to worsening right lower extremity pain, weakness, numbness as well as multiple episodes of urinary incontinence compatible with cauda equina syndrome. Dr. Hott was the neurosurgeon on-call who was called in for an emergent consultation. S.C. was diagnosed with extruded right-sided L5-Sl disk and acute cauda equina syndrome. Accordingly, Dr. Hott performed a right-sided L5-S1 microdiscectomy.

70.     For these services, Dr. Hott submitted charges to Cigna in the amount of $50,000. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid Dr. Hott $1,956.36, less than 4% of the billed charges.

71.     Pursuant to Paragraph 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 5/8/2017 date of service on August 17, 2017; September 11, 2017; and October 5, 2017; however, to no avail.

**C.     Dr. Hott's Claims and Appeals on behalf of J.C.**

72.     J.C., age 40, is insured through a Benefit Program administered by Cigna on behalf of AAA Arizona, Inc. The insurance card issued to J.C. by Cigna includes the MultiPlan logo, indicating that J.C.'s Benefit Program participates with the MultiPlan Savings Program.

73.     J.C. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $104,842.00 to Cigna for services rendered to J.C. and was paid $4,882.71, less than 5% of the billed charges.

74.     On April 14, 2017, J.C. was presented to the emergency room at John C. Lincoln

14

North Mountain Hospital. Dr. Hott was the neurosurgeon on-call at the time and was called in for an emergent consultation, which resulted in an emergent surgery. Specifically, J.C. was diagnosed with severe spinal canal stenosis at C5-C6; cervical myeloradiculopathy; spinal cord contusion; and quadriparesis, whereby Dr. Hott performed urgent anterior cervical partial corpectomy C5-C6 with spinal cord decompression; intraoperative microscopy; C5-C6 discectomy with bilateral neural foraminotomies; C5-C6 interbody arthrodesis; application of interbody cage at C5-C6; and C5-C6 plate fixation.

75.     For these services, Dr. Hott submitted charges to Cigna in the amount of $104,842.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid Dr. Hott $4,882.71, less than 5% of the billed charges.

76.     On or about June 19, 2017, MultiPlan expressed to Dr. Hott that not only did Cigna refuse to render payment at the Contract Rates, but MultiPlan also expressed that Cigna "has contracted with MultiPlan to facilitate resolution of the above referenced services due to the Provider being out of network for this claim." In contradiction of the Provider Agreement, MultiPlan simultaneously and brazenly claimed MultiPlan "is not financially responsible for any payments due to the Provider."

77.     Pursuant to Paragraph 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 4/14/2017 date of service on July 11, 2017; September 9, 2017; October 2, 2017; November 2, 2017; January 26, 2018; and August 2, 2017; however, to no avail.

**D.      Dr. Hott's Claims and Appeals on behalf of P.D.**

78.     P.D., age 51, is insured through a Benefit Program administered by Cigna on behalf of Printpack, Inc. The insurance card issued to P.D. by Cigna includes the MultiPlan logo,

indicating that P.D.'s Benefit Program participates with the MultiPlan Savings Program.

79.    P.D. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $37,642.00 to Cigna for services rendered to P.D. and was paid $2,467.75, less than 7% of the billed charges.

80.    On October 15, 2018, P.D. was presented to the emergency room at John C. Lincoln North Mountain Hospital. Dr. Hott was the Neurosurgeon on call when he was called to an emergency consultation. P.D. was diagnosed with severe lumbar spinal canal stenosis at L4-L5 and right paracentral L4-L5 herniated nucleus pulposus. Accordingly, Dr. Hott performed decompressive lumbar laminectomy and a right-sided L4-L5 microdiscectomy to decompress the thecal sac.

81.    For these services, Dr. Hott submitted charges to Cigna in the amount of $37,642.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid Dr. Hott $2,467.75, less than 7% of the billed charges.

82.    On or about January 29, 2019, MultiPlan expressed to P.D. that not only did Cigna refuse to render payment at the Contract Rates, but MultiPlan expressed that Cigna "has contracted with MultiPlan to facilitate resolution of the above referenced services due to the Provider being out of network for this claim." In contradiction of the Provider Agreement, MultiPlan simultaneously and brazenly claimed MultiPlan "is not financially responsible for any payments due to the Provider." Nevertheless, MultiPlan offered $4,560.30 to settle the 10/15/18 date of service, less than 13% of the billed charges.

83.    Pursuant to Paragraph 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 10/15/18 date of service; however,

to no avail. On April 3, 2019, Dr. Hott was informed by a third-party pricing negotiator on behalf of Cigna that the claim would not be subject to further review.

**E.      Dr. Hott's Claims and Appeals on behalf of D.F.**

84.      D.F., age 69, is insured through a Benefit Program administered by Cigna on behalf of Arizona Pipe Trades. The insurance card issued to D.F. by Cigna includes the MultiPlan logo, indicating that D.F.'s Benefit Program participates with the MultiPlan Savings Program.

85.      D.F. underwent multiple surgical procedures performed by Dr. Hott that were later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement.

86.      On March 6, 2017, Dr. Hott submitted a request to Cigna to review and approve the procedures. "After reviewing [D.F.'s] medical information and health plan, [Cigna] approved this request."

87.      Specifically, D.F. had been diagnosed with C3-C4 spinal canal stenosis, cervical spondylitic myelopathy, and severe lumbar spinal canal stenosis at L3-L4. Accordingly, on March 21, 2017, Dr. Hott performed anterior cervical partial corpectomy of C3-C4; spinal cord decompression; intraoperative microscopy; C3-C4 interbody arthrodesis; application of interbody cage at C3-C4; and C3-C4 plate fixation. Thereafter, on March 24, 2017, Dr. Hott performed decompressive lumbar laminectomy of L3-L4.

88.      In all, with respect to the 3/21/2017 date of service, Dr. Hott submitted claims totaling $51,921.00 to Cigna for services rendered to D.F. and was paid $11,636.43, less than 23% of the billed charges. With respect to the 3/24/2017 date of service, Dr. Hott submitted claims totaling $24,495.00 to Cigna for services rendered to D.F. and was paid $600.51, less than 3% of the billed charges.

89.      Pursuant to Paragraph 5.3 of the Provider Agreement, Dr. Hott submitted a

challenge to Cigna directly related to its underpayment of the 3/21/2017 and 3/24/2017 dates of service, in which Dr. Hott's appeal was denied. Dr. Hott then submitted additional appeals on August 9, 2017; September 29, 2017; and November 3, 2017; however, to no avail.

**F.     Dr. Hott's Claims and Appeals on behalf of V.G.**

90.     V.G., age 56, is insured through a Benefit Program administered by Cigna on behalf of General Dynamics. The insurance card issued to V.G. by Cigna includes the MultiPlan logo, indicating that V.G.'s Benefit Program participates with the MultiPlan Savings Program.

91.     V.G. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $36,742.00 to Cigna for services rendered to V.G. and was paid $3,288.78, less than 9% of the billed charges.

92.     On May 2, 2017, Dr. Hott performed authorized and approved decompressive lumbar laminectomy at L3- L4 on V.G., who had been diagnosed with L3-L4 spinal canal stenosis and intermittent neurogenic claudication.

93.     For these services, Dr. Hott submitted charges to Cigna in the amount of $37,642.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid Dr. Hott $3,288.78, less than 9% of the billed charges.

94.     On or about August 17, 2017, MultiPlan expressed to V.G. that not only did Cigna refuse to render payment at the Contract Rates, but MultiPlan also expressed that Cigna "has contracted with MultiPlan to facilitate resolution of the above referenced services due to the Provider being out of network for this claim." In contradiction of the Provider Agreement, MultiPlan simultaneously and brazenly claimed MultiPlan "is not financially responsible for any payments due to the Provider." Nevertheless, MultiPlan offered $4,146.76 to settle the 5/2/2017

date of service, less than 12% of the billed charges

95.     Pursuant to Paragraph 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 5/2/2017 date of service, in which Dr. Hott's appeal was denied. Dr. Hott submitted additional appeals on August 31, 2017; January 26, 2018; March 23, 2018; July 26, 2018; however, to no avail.

**G.     Dr. Hott's Claims and Appeals on behalf of L.K.**

96.     L.K., age 58, is insured through a Benefit Program administered by Cigna on behalf of Haydon Building Corp. The insurance card issued to L.K. by Cigna includes the MultiPlan logo, indicating that Cigna's Benefit Program participates with the MultiPlan Savings Program.

97.     L.K. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna but never paid at the rates set forth in the Agreement. In all, Dr. Hott submitted claims totaling $77,881.00 to Cigna for services rendered to L.K. and was paid $0.00.

98.     On May 30, 2017, L.K. came in for a surgical consultation with Dr. Hott. L.K. was diagnosed with left C6-C7 foraminal stenosis and left C7 radiculopathy. Dr. Hott requested and subsequently received approval from Cigna to perform a surgical procedure pursuant to the diagnosis.

99.     On June 13, 2017, Dr. Hott performed anterior cervical partial corpectomy of C6-C7 with spinal cord decompression; intraoperative microscopy; C6-C7 discectomy and bilateral foraminotomies; C6-C7 interbody arthrodesis.; application of constructs mini-PTC cage between C6- C7; and plate fixation at C6-C7.

100.     The 5/30/2017 consultation was billed to Cigna and processed on August 23, 2017. However, the 6/13/2017 date of service resulted in nonpayment.

101.     Pursuant to Paragraph 5.3 of the Provider Agreement, Dr. Hott submitted a

challenge to Cigna directly related to its nonpayment of the 6/13/2017 date of service on September 22, 2017; October 9, 2017; February 22, 2018; April 9, 2018; April 24, 2018; and July 30, 2018; however, to no avail.

**H.     Dr. Hott's Claims and Appeals on behalf of R.K.**

102.    R.K., age 65, is insured through a Benefit Program administered by Cigna on behalf of Collaborative Solutions. The insurance card issued to R.K. by Cigna includes the MultiPlan logo, indicating that R.K.'s Benefit Program participates with the MultiPlan Savings Program.

103.    R.K. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Agreement. In all, Dr. Hott submitted claims totaling $80,129.00 to Cigna for services rendered to R.K. and was paid $2,069.46, less than 3% of the billed charges.

104.    On June 5, 2018, R.K. was diagnosed with Grade 1 anterolisthesis of L4-L5; and L4-L5 severe spinal canal stenosis. Dr. Hott performed decompressive lumbar laminectomy of L4-L5, and superior aspect of S1 for stenosis; L4-L5 pedicle screw fixation; L4-L5 posterolateral arthrodesis (intertransverse and facet); and utilization of stealth frameless stereotaxis image guidance for navigated screw placement.

105.    For these services, Dr. Hott submitted charges to Cigna in the amount of $80,129.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid Dr. Hott $2,069.46, less than 3% of the billed charges.

106.    On August 27, 2018 and again August 28, 2018, Dr. Hott's office received and rejected an offer of $14,300.00 to settle the 6/5/2018 date of service. Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 6/5/2018 date of service on September 10, 2018 and October 4, 2018; however, to no avail.

**I.      Dr. Hott's Claims and Appeals on behalf of M.L.**

107.    M.L., age 48 at the time of surgery but now deceased, was insured through a Benefit Program administered by Cigna on behalf of Younger Brother. The insurance card issued to M.L. by Cigna includes the MultiPlan logo, indicating that M.L's Benefit Program participates with the MultiPlan Savings Program.

108.    M.L. underwent multiple surgical procedures performed by Dr. Hott that were later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $99,290.00 to Cigna for services rendered to M.L. and was paid $1,818.38, less than 2% of the billed charges.

109.    On August 30, 2016, M.L. was presented as a trauma patient to John C. Lincoln North Mountain Hospital after M.L. reportedly collapsed at work. Dr. Hott was the on-call neurosurgeon at John C. Lincoln Honor Health Hospital and was called in for an emergency consultation for patient M.L., who was diagnosed with a skull fracture, left holohemispheric acute subdural hematoma, and subfalcine and uncal herniation. Dr. Hott performed decompressive left front temporoparietal craniectomy, evacuation of subdural hematoma, sub temporal decompression, and intraoperative microscopy. On the same date following this procedure, M.L. was then diagnosed with loss of cervical lordosis (rule out ligamentous) instability, whereby Dr. Hott performed closed reduction and external immobilization of cervical spine.

110.    In late October 2016, Dr. Hott received and rejected multiple offers from MultiPlan with respect to a settlement for the billed charges, which were far below the Contract Rates as per the Provider Agreement.

111.    On or about October 26, 2016, MultiPlan expressed to M.L. that not only did Cigna refuse to render payment at the Contract Rates, but MultiPlan also expressed that Cigna "has

contracted with MultiPlan to facilitate resolution of the above referenced services due to the Provider being out of network for this claim." In contradiction of the Provider Agreement, MultiPlan simultaneously and brazenly claimed MultiPlan "is not financially responsible for any payments due to the Provider." Nevertheless, MultiPlan offered $2,692.36 to settle the 8/30/2016 date of service, less than 3% of the billed charges.

112.    Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 8/30/2016 date of service on December 14, 2016; March 24, 2017; May 10, 2017; May 11, 2017; and May 30, 2017; however, to no avail.

**J.    Dr. Hott's Claims and Appeals on behalf of S.M.**

113.    S.M., age 70, is insured through a Benefit Program administered by Cigna on behalf of APL Logistics. The insurance card issued to S.M. by Cigna includes the MultiPlan logo, indicating that S.M.'s Benefit Program participates with the MultiPlan Savings Program.

114.    S.M. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $36,742.00 to Cigna for services rendered to S.M. and was paid $727.22, less than 2% of the billed charges.

115.    On October 11, 2016, S.M. was diagnosed with lumbar spinal canal stenosis of L4-L5 and neurogenic claudication. Dr. Hott performed an approved and authorized decompressive lumbar laminectomy of L4- L5.

116.    For these services, Dr. Hott submitted charges to Cigna in the amount of $36,742.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid $727.22, less than 2% of the billed charges.

117.    In December 2016, Dr. Hott received and rejected multiple offers from MultiPlan

with respect to a settlement for the billed charges, which were far below the Contract Rates as per the Provider Agreement.

118.    On or about December 13, 2016, MultiPlan expressed to S.M. that not only did Cigna refuse to render payment at the Contract Rates, but MultiPlan also expressed that Cigna "has contracted with MultiPlan to facilitate resolution of the above referenced services due to the Provider being out of network for this claim." In contradiction of the Provider Agreement, MultiPlan simultaneously and brazenly claimed MultiPlan "is not financially responsible for any payments due to the Provider." Nevertheless, MultiPlan offered $5,200.00 to settle the 10/11/16 date of service, less than 15% of the billed charges.

119.    Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 10/11/16 date of service on February 20, 2017 and April 4, 2017; however, to no avail.

**K.    Dr. Hott's Claims and Appeals on behalf of W.M.**

120.    W.M., age 70, is insured through a Benefit Program administered by Cigna on behalf of Learning Matters. The insurance card issued to W.M. by Cigna includes the MultiPlan logo indicating that W.M.'s Benefit Program participates with the MultiPlan Savings Program.

121.    W.M. underwent a consultation and authorized surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $28,995.00 to Cigna for services rendered to W.M. and was paid $3,427.18, less than 12% of the billed charges.

122.    On January 14, 2015, W.M. visited Dr. Hott for a consultation and had been diagnosed with severe lumbar spinal canal stenosis with neurogenic claudication. On February 10, 2015, Dr. Hott performed an authorized and approved decompressive lumbar laminectomy of L3,

L4, and L5.

123.     For these services, the claim for the 1/14/2015 consultation was submitted together with the claim for the 2/10/2015 date of service. Although the 1/14/2015 consultation was processed as per the Provider Agreement, the 2/10/2015 date of service was processed and paid at a much lower rate. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid $3,427.18, less than 12% of the total billed charges.

124.     Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 2/10/2015 date of service on June 3, 2015 and August 20, 2015; however, to no avail.

**L.     Dr. Hott's Claims and Appeals on behalf of M.M.**

125.     M.M., age 55, is insured through a Benefit Program administered by Cigna on behalf of General Dynamics. The insurance card issued to M.M. by Cigna includes the MultiPlan logo, indicating that M.M.'s Benefit Program participates with the MultiPlan Savings Program.

126.     M.M. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $100,189.00 to Cigna for services rendered to M.M. and was paid $9,425.00, less than 10% of the billed charges.

127.     On December 30, 2017, M.M. was presented to John C. Lincoln Medical Center and diagnosed with central canal and foraminal stenosis and bilateral upper extremity radiculopathy. With Cigna's approval and authorization, Dr. Hott performed anterior cervical partial corpectomy with spinal cord decompression, intraoperative microscopy, discectomies with bilateral neural foraminotomies, interbody arthrodesis, application of interbody cages, and segmental plate fixation.

128.   For these services, Dr. Hott submitted charges to Cigna in the amount of $100,189.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid $9,425.00, less than 10% of the billed charges.

129.   Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 12/30/2017 date of service on May 7, 2018 and September 20, 2018; however, to no avail.

**M.     Dr. Hott's Claims and Appeals on behalf of R.P.**

130.   R.P., age 43, is insured through a Benefit Program administered by Cigna on behalf of Make A Wish Foundation. The insurance card issued to R.P. by Cigna includes the MultiPlan logo, indicating that R.P.'s Benefit Program participates with the MultiPlan Savings Program.

131.   R.P. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $84,225 to Cigna for services rendered to R.P. and was paid $1,037.57, less than 2% of the billed charges.

132.   On January 10, 2018, Dr. Hott requested and subsequently received authorization from Cigna to perform the procedure on R.P., who had been diagnosed with cervical spinal canal stenosis, C5-C7 and cervical spondylitic myeloradiculopathy. On February 5, 2018, Dr. Hott performed the extensive spinal surgery on R.P., whereby Dr. Hott performed anterior cervical partial corpectomy of C5-C7; spinal cord decompression; intra operative microscopy; C5-C7 discectomy with bilateral neural foraminotomies; C5-C7 interbody arthrodesis; application of interbody cages at C5-C7; and segmental plate fixation.

133.   For these services, Dr. Hott submitted charges to Cigna in the amount of $84,225. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but

nevertheless only paid $1,037.57, less than 2% of the billed charges.

134.    Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 2/5/2018 date of service on July 2, 2018; Jul 20, 2018; July 30,2018; August 7, 2018; September 13, 2018; and July 12, 2019; however, to no avail.

**N.    Dr. Hott's Claims and Appeals on behalf of J.R.**

135.    J.R., age 56, is insured through a Benefit Program administered by Cigna on behalf of Honeywell International, Inc. The insurance card issued to J.R. by Cigna includes the MultiPlan logo, indicating that J.R.'s Benefit Program participates with the MultiPlan Savings Program.

136.    J.R. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $77,881.00 to Cigna for services rendered to J.R. and was paid $880.71, less than 2% of the billed charges

137.    On March 15, 2017, J.R. visited Dr. Hott for a consultation. J.R. was diagnosed with C6-C7 bilateral foraminal stenosis and bilateral upper extremity radiculopathy. On July 18, 2017, Dr. Hott requested and subsequently received authorization from Cigna to perform a procedure following this consultation.

138.    On August 15, 2017, Dr. Hott performed anterior cervical partial corpectomy C6-C7 with spinal foraminal decompression; intraoperative microscopy; C6-C7 discectomy; C6-C7 interbody arthrodesis; application of Construx Mini PTC cage between C6-C7; and C6-C7 plate fixation.

139.    With respect to the 3/15/2017 consultation, Dr. Hott billed $600.00, and Cigna paid $480.00, which represent 80% of the billed charges for the 3/15/2017 consultation in accordance with the Provider Agreement. However, with respect to the 8/15/2017 date of service, Dr. Hott

submitted charges to Cigna in the amount of $84,225.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid $1,037.57, less than 2% of the billed charges.

140.    Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 8/15/2017 date of service on November 21, 2017; January 11, 2018; March 23, 2018; June 5, 2018; February 4, 2019; February 26, 2019; and July 12, 2019; however, to no avail.

**O.    Dr. Hott's Claims and Appeals on behalf of B.R.**

141.    B.R., age 60, is insured through a Benefit Program administered by Cigna on behalf of Mesa Public Schools. The insurance card issued to B.R. by Cigna includes the MultiPlan logo, indicating that B.R's Benefit Program participates with the MultiPlan Savings Program.

142.    B.R. underwent a surgery performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $77,881.00 Cigna for services rendered to B.R. and was paid $0.00 of the billed charges.

143.    On March 7, 2017, B.R. was presented to John C. Lincoln Medical Center with a diagnosis of right-sided disk herniation and right radiculopathy. Dr. Hott performed anterior cervical partial corpectomy of C7-T1; spinal cord decompression; intraoperative microscopy; C7-T1 discectomy; C7-T1 interbody arthrodesis; application of interbody cage; and C7-T1 fixation with Hallmark plate from Orthofix.

144.    For these services, Dr. Hott submitted charges to Cigna in the amount of $77,881.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless refused to pay any portion of the claim.

145.    Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted challenges to Cigna directly related to their nonpayment of the 3/7/2018 date of service; however, to no avail.

**P.      Dr. Hott's Claims and Appeals on behalf of D.S.**

146.    D.S., age 52, is insured through a Benefit Program administered by Cigna on behalf of Hospice of the Valley. The insurance card issued to D.S. by Cigna includes the MultiPlan logo, indicating that D.S.'s Benefit Program participates with the MultiPlan Savings Program.

147.    D.S. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $100,189.00 to Cigna for services rendered to D.S. and was paid $5,327.10, less than 6% of the billed charges.

148.    On February 13, 2018, D.S. was presented to John C. Lincoln Hospital with a diagnosis of central canal and bilateral neural foraminal stenosis, right herniated nucleus pulposus, and a right upper extremity radiculopathy. Dr. Hott performed approved and authorized anterior cervical partial corpectomy with spinal cord decompression, intraoperative microscopy, discectomy with bilateral neural foraminotomies, interbody arthrodesis, application of interbody cages, and segmental plate fixation.

149.    For these services, Dr. Hott submitted charges to Cigna in the amount of $100,189.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid $5,327.10, less than 6% of the billed charges.

150.    In June and September 2018, Dr. Hott received and rejected multiple offers from MultiPlan with respect to a settlement for the billed charges, which were far below the Contract Rates as per the Provider Agreement.

151.    Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna

28

directly related to its underpayment of the 2/13/2018 date of service on May 30, 2018; July 25, 2018; and October 23, 2018; however, to no avail.

**Q.     Dr. Hott's Claims and Appeals on behalf of R.S.**

152.    R.S., age 61, is insured through a Benefit Program administered by Cigna on behalf of Hospice of the Valley. The insurance card issued to R.S. by Cigna includes the MultiPlan logo, indicating that R.S.'s Benefit Program participates with the MultiPlan Savings Program.

153.    R.S. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $43,492.00 to Cigna for services rendered to R.S. and was paid $1,254.89, less than 3% of the billed charges.

154.    On July 10, 2018, R.S. was presented to John C. Lincoln Hospital with a diagnosis of severe lumbar spinal canal stenosis and intermittent neurogenic claudication. Dr. Hott performed an authorized and approved decompressive lumbar laminectomy.

155.    For these services, Dr. Hott submitted charges to Cigna in the amount of $43,492.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid $1,254.89, less than 3% of the billed charges.

156.    On or about October 3, 2018, MultiPlan expressed to R.S. that not only did Cigna refuse to render payment at the Contract Rates, but MultiPlan expressed that Cigna "has contracted with MultiPlan to facilitate resolution of the above referenced services due to the Provider being out of network for this claim." In contradiction of the Provider Agreement, MultiPlan simultaneously and brazenly claimed MultiPlan "is not financially responsible for any payments due to the Provider." Nevertheless, MultiPlan offered $6,000 to settle the 7/10/2018 date of service, less than 14% of the billed charges.

157.     Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna directly related to its underpayment of the 7/10/2018 date of service on October 11, 2018; however, to no avail.

**R.     Dr. Hott's Claims and Appeals on behalf of J.W.**

158.     J.W., age 65, is insured through a Benefit Program administered by Cigna on behalf of APS. The insurance card issued to J.W. by Cigna includes the MultiPlan logo, indicating that J.W.'s Benefit Program participates with the MultiPlan Savings Program.

159.     J.W. underwent a surgical procedure performed by Dr. Hott that was later billed to Cigna and paid at rates far below the Contract Rates set forth in the Provider Agreement. In all, Dr. Hott submitted claims totaling $56,992.00 to Cigna for services rendered to J.W. and was paid $1,302.17, less than 3% of the billed charges.

160.     J.W. was diagnosed with L2- S1 spinal canal stenosis; neurogenic claudication; and bilateral lower extremity radiculopathy. On December 27, 2017, Dr. Hott requested and received approval from Cigna to perform a procedure. On January 23, 2018, Dr. Hott performed the approved and authorized surgery, including partial removal of middle spine bone with release of spinal cord or nerves and partial removal of spine bone with release of spinal cord or nerves.

161.     For these services, Dr. Hott submitted charges to Cigna in the amount of $56,992.00. Cigna deemed the services as "Covered Services" as defined by the Provider Agreement, but nevertheless only paid $1,302.17, less than 3% of the billed charges.

162.     In March 2018, Dr. Hott received and rejected multiple offers from MultiPlan with respect to a settlement for the billed charges, which were far below the Contract Rates as per the Provider Agreement.

163.     Pursuant to 5.3 of the Provider Agreement, Dr. Hott submitted a challenge to Cigna

directly related to its underpayment of the 1/23/2018 date of service on April 9, 2018; August 1, 2018; and December 17, 2018; however, to no avail.

**CIGNA'S USE OF THIRD PARTIES TO REDUCE ONET PAYOUTS**

164.    As explored earlier,  Cigna is incentivized to pay ONET providers as little as possible, because the less Cigna pays, the more it can charge its self-funded clients in Shared Savings Fees. By paying the provider less than its Contract Rate, Cigna keeps the difference and passes the burden onto the provider, and ultimately, the member.

165.    Twelve out of the eighteen underpaid claims in this action had their claims processed using a third-party pricing company.

166.    For example, the EOBs released by Cigna for patients S.C., J.C., P.D. V.G., M.M., J.R., B.R., R.S., and J.W., explain; "Patient is not liable if you accept the ERS allowable amount. Contact Zelis … before billing the patient." The EOBs for M.L. and S.M. cite similar language but instruct the provider to contact Viant. The EOB for W.F. cites similar language but instructs the provider to contact HealthEZPay.

167.    Zelis, Viant, and HealthEZPay are all third-party pricing organizations who have contracted with Cigna to reduce out of network costs. This reduction is achieved through a back-end negotiation where the third-party pricer takes a massive discount off the allowed amount of the claims without contacting the provider. From there, the short-paid check and the EOB arrives to the provider with an explanation that the claim was processed by one of the aforementioned companies and that they should contact the third-party pricer before balance billing the member. At this point, it is contingent on the provider to either negotiate a new rate or have the claim sent back for reprocessing at the patient's correct benefit level.

168.    This  back-end  negotiation  strategy  is  exactly  what  occurred  with  the

aforementioned claims that Cigna short paid for Dr. Hott's patients. Efforts to negotiate or have the claim reprocessed by Cigna were unsuccessful.

169.    This "negotiation" tactic represents a breach of both the Provider Agreement with MultiPan, and in turn the implied contract with Cigna, both of which required Dr. Hott to be paid at the Contracted Rate. For Cigna to utilize a third-party pricing company, and for MultiPlan to allow it, is not only unfortunate, but also a flagrant breach of the Provider Agreement on behalf of MultiPlan and a similarly flagrant breach of the implied contract on behalf of Cigna.

## COUNT I
## BREACH OF CONTRACT
### (Against MultiPlan Only)

170.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

171.    In July 2012, Dr. Hott and MultiPlan entered into the Provider Agreement.

172.    MultiPlan promised to require its Clients and Users, including Cigna, to reimburse Dr. Hott his Contract Rate for surgical and related medical services rendered by Dr. Hott to patients whose Benefit Programs elected to participate in the MultiPlan program, as identified by the MultiPlan logo on the patients' insurance cards.

173.    Pursuant to Paragraph 2.1 in Exhibit D of the Provider Agreement, Dr. Hott's Contract Rates are 80% of Dr. Hott's billed charges.

174.    When Dr. Hott billed Cigna for services rendered to S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W., patients enrolled in a Benefit Program administered by Cigna and whose insurance card contained the MultiPlan logo, Cigna paid Dr. Hott far less than his Contract Rates.

175.    MultiPlan breached its contract with Dr. Hott by failing to ensure its Clients, including Cigna, reimbursed Dr. Hott for services rendered to S.A., S.C., J.C., P.D., D.F., V.G.,

L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W., at the Contract Rate.

176.     As a direct and proximate result of MultiPlan's breach of its Provider Agreement with Dr. Hott, Dr. Hott has sustained damages not less than $900,000.

## COUNT II
### BREACH OF IMPLIED CONTRACT
### (Against Cigna Only)

177.     The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

178.     Cigna indicated by dealings and circumstances surrounding the relationship, express representations, and course of conduct, that they would pay the Contract Rate to Dr. Hott for medical services provided to insureds whose plan was in MultiPlan Savings Program.

179.     Cigna is in the business of underwriting and administering commercial health benefit plans, it is responsible for reimbursing medical providers for services rendered to its members consistent with contractual obligations.

180.     By placing the MultiPlan logo on S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W.'s insurance cards, Cigna indicated to Dr. Hott that the Benefit Programs through which S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W. had health benefits participated in the MultiPlan Savings Program.

181.     Cigna has established conduct and course of dealing with Dr. Hott, whereas it expressly paid the MultiPlan Contract Rate for services provided to patient's whose insurance cards have the MultiPlan logo. *See* ¶¶ 40-48.

182.     Cigna's marketing communications to its insureds and the public represent its clear participation and subsequent expectation to providers of their participation in the MultiPlan's Complementary Provider Network. *See* ¶¶ 49-53.

183.    Cigna's representation that S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W.'s Benefit Program participated in MultiPlan's Complimentary Provider Network and their conduct in the dealing with Dr. Hott, created and implied-in-fact contract with Dr. Hott promising that it would be paid pursuant to the Contract Rate set forth in the Provider Agreement.

184.    By substantially underpaying Dr. Hott for the professional services provided to S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W., Cigna has breached that implied-in-fact contact.

185.    As a direct and proximate result of Cigna's breach of its implied-in-fact contract with Dr. Hott, Dr. Hott has sustained damages not less than $900,000.00.

### COUNT III
### BREACH OF IMPLIED WARRANTY
### OF GOOD FAITH AND FAIR DEALING
### (Against all Defendants)

186.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

187.    Arizona law implies in every contractual relationship an implied warranty of good and fair dealing whereby parties are obligated to act in a manner that is consistent with the reasonable expectations of the other party to the contract.

188.    Defendants violated the implied warranty of good faith and fair dealing with respect to their contracts with Dr. Hott through acts of commission and omission that were wrongful and without justification.

189.    Specifically, Defendant MultiPlan failed to enforce Paragraph 4.7 of the Provider Agreement, where it "will require Clients and its Users to use the Contract Rate." By allowing its Clients and Users to indiscriminately chose to not pay the Contract Rate to contracted providers,

MultiPlan has breached the implied warranty of good faith and fair dealing.

190.    Similarly, by indiscriminately failing to pay the Contract Rate which it promised to pay through an implied-in-fact contract, Cigna has also breached the implied warrant of good faith and fair dealing.

191.    And finally, because Defendants' breach of their contractual obligations to Dr. Hott were motivated, at least in part, by their desire to increase the Shared Savings Fees paid by Cigna's self-funded clients to be shared by and among them, Defendants' breaches of their obligations to Dr. Hott were in bad faith, and utterly inconsistent with the reasonable expectations of Dr. Hott, the other party to the contract.

192.    As a direct and proximate result of Defendants breaches, Dr. Hott has sustained damages not less than $900,000.

**COUNT IV**
**PROMISSORY ESTOPPEL**
**(Against all Defendants)**

193.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

194.    Defendants' collective, consistent, and repeated representations that MultiPlan would enforce, and that Cigna would honor, the Contract Rate in the Provider Agreement for services rendered to S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W., represented a promise to Dr. Hott.

195.    Defendants knew or should have known that Dr. Hott would rely upon Defendants promises to honor the Contract Rate in the Provider Agreement.

196.    Dr. Hott substantially relied upon the promises made by the Defendants that they would honor the Contract Rate in the Provider Agreement.

197.    Injustice can only be avoided by legally enforcing Defendants promises to enforce

or honor the Contract Rate in the Provider Agreement.

## COUNT V
## QUANTUM MERUIT
### (Against all Defendants)

198.    The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

199.    Dr. Hott furnished valuable services in the form of surgical and related medical interventions to S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W.

200.    The valuable services provided to S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W., were provided to and accepted by S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W. under such circumstances that Defendants were reasonably notified that Dr. Hott in providing the services in question expected to be paid its Contract Rate under the Provider Agreement.

201.    Defendants received the benefit of Dr. Hott's participation in the MultiPlan's Complementary Provider Network and its treatment of the Cigna members in question, including but not limited to the collection of the Shared Savings Fees by and among Cigna, and MultiPlan's refusal to enforce  Dr. Hott's Contract Rate

202.    It is manifestly unjust that the Defendants received the benefit of Dr. Hott's participation in the MultiPlan's Complementary Provider Network and its treatment of the Cigna members in question, including but not limited to the collection of Shared Savings Fees by and among Cigna without honoring Dr. Hott's Contract Rate.

**WHEREFORE**, Plaintiff demands judgment on all the foregoing counts in their favor against Defendants as follows:

36

A.      Awarding Dr. Hott compensatory damages not less than $900,000.00;

B.      Awarding Dr. Hott pre-judgment interest under the Arizona prompt payment law and the regulations promulgated thereunder;

C.      Awarding Dr. Hott punitive damages for Defendants' malicious and oppressive conduct that reflected a conscious disregard of Dr. Hott's rights;

D.      Awarding Dr. Hott disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

E.      Granting such other and further relief as is just and proper considering the evidence.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Dr. Hott hereby demands a trial by jury of any issue trial of right by a jury.

Dated: March 31, 2022                    Respectfully submitted,

                                          /s/ John W. Leardi
                                         John W. Leardi
                                         Nicole P. Allocca
                                         BUTTACI LEARDI & WERNER LLC
                                         212 Carnegie Center, Suite 202
                                         Princeton, New Jersey 08540
                                         609-799-5150

                                         Leslie Howard
                                         Michael Fried
                                         COHEN HOWARD, LLP
                                         766 Shrewsbury Ave., Suite 200
                                         Tinton Falls, NJ 07724
                                         732-747-5202

                                         *Attorneys for Plaintiff*
                                         *Jonathan Hott, M.D.*