ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/13/23_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN HOTT, M.D.,

                         Plaintiff,

            - against -

MULTIPLAN, INC., and CIGNA HEALTH and
LIFE INSURANCE COMPANY,

                         Defendants.

21 Civ. 02421 (LLS)

OPINION & ORDER

Dr. Hott ("Hott") alleges he was underpaid for medical services he provided to eighteen patients who were insured by employee benefit programs underwritten by Cigna Health and Life Insurance Company ("Cigna"). To recover the difference he is allegedly owed, Hott asserts various contractual and quasi-contractual claims under Arizona state law against Cigna and the administering preferred provider organization ("PPO"), MultiPlan, Inc. ("MultiPlan").

Defendants separately move to dismiss the First Amended Complaint for failure to state a claim. For the reasons set forth herein, Cigna's motion is granted in full and MultiPlan's motion is granted as to the breach of the implied warranty of good faith and fair dealing and quantum meruit claims but denied as the breach of contract and promissory estoppel claims.

## BACKGROUND

The following facts are taken from the First Amended Complaint and are presumed to be true for the purpose of this

1

ruling. The parties' familiarity with the action is assumed and the Court will only recount what is necessary for disposition.

Dr. Hott is a neurosurgery spine specialist in Arizona. Dkt. No. 30 (First Amended Compl. ("FAC")) ¶ 2. Cigna administers "Benefit Programs," a.k.a. employee benefit health plans, by processing and adjudicating claims for reimbursement of healthcare expenses incurred by plan members on behalf of those Benefit Programs. FAC ¶ 8.

MultiPlan administers a preferred provider organization ("PPO") network. FAC ¶ 4. In that role, MultiPlan offers a Complementary Provider Network, which acts as a secondary network to a health plan administrator's preferred provider network. FAC ¶¶ 4-5, 20. To create the Complementary Provider Network, MultiPlan contracts with out-of-network doctors and healthcare providers, who agree to receive a discounted rate (the Contract Rate) for services provided to patients whose health benefit plans participate in MultiPlan's Complementary Provider Network. FAC ¶¶ 20-21.

MultiPlan then sells the right to access the providers' pre-arranged rates to health plan administrators, like Cigna, acting on behalf of their respective Benefit Plans.  FAC ¶ 20. "Notably, when a health plan administrator such as Cigna contracts with MultiPlan to access its Complementary Provider Network and the Contract Rate payable to [out-of-network]

providers thereunder, not every one of the plans they administer are given access to MultiPlan's Complementary Provider Network, i.e., not every one of Cigna's plans participate in MultiPlan's Complementary Provider Network." FAC ¶ 22. Health plan administrators benefit from using the Complementary Provider Network by either (1) paying the discounted lower rate, as opposed to the standard out-of-network rate, for claims they are responsible to pay directly or (2) receiving from their self-insured clients a higher "Shared Savings Fee," a percentage of the difference between the provider's standard out-of-network charge and the amount ultimately paid by the administrator on the claim. FAC ¶¶ 24-27.

Cigna advertises on its website its participation in the MultiPlan Complementary Network. Cigna's website states that "if the MultiPlan Savings Program logo appears on your Cigna ID card, you may be eligible to receive discounts when using an [out-of-network], non-participating health care professional or facility that participates in the Network Savings Program." FAC ¶ 52.

In July 2012, Dr. Hott contracted with MultiPlan to be a participating provider in its Complementary Provider Network. Hott alleges that under the Provider Agreement (the "Agreement") MultiPlan represented to Dr. Hott that its Clients and Users would pay the Contract Rate to Dr. Hott for surgical and other

related medical services rendered to Dr. Hott's patients
enrolled in Benefit Programs underwritten and/or administered by
Cigna when any such patient accesses MultiPlan's Complementary
Provider Network. FAC ¶ 30. Thus, Hott alleges that the
Agreement entitles him to be paid at the Contract Rate, 80% of
his billed charges, when he provides covered services to
patients presenting a Cigna insurance card containing the
MultiPlan logo. FAC ¶¶ 30-31. In exchange, Hott alleges he is
bound to provide services when presented with a patient
participating in the MultiPlan Network and cannot balance bill
the patient for the difference between the Contract Rates and
his usual fees. FAC ¶¶ 32, 36.

Specifically, the Agreement states:

"MPI ["MultiPlan"] will require Clients and its Users to
use the Contract Rates agreed to in this Agreement solely for
Covered Services rendered to Participants covered under a
Program which utilizes the Network." Dkt. No. 38, Ex. 2-A (the
Agreement) § 4.7.

"MPI ["MultiPlan"] agrees that it has entered into
agreements with Clients that specify that the right to access
the Network, including access to the Contract Rates, shall be
subject to the terms of this Agreement." Id. at § 4.3.

Dr. Hott routinely provided services to patients presenting
a Cigna insurance card that bears the MultiPlan logo. When Hott

4

submitted claims for those services to Cigna, Cigna paid the Contract Rate, including: in 2012 on September 7 and 8, October 9, and November 29; in 2013 on February 18 and 19, May 20 and 21, June 4 and 5, August 19, October 9, 27, and 30, and November 5; in 2014 on February 27, April 21 and 29, May 5, 28, and 29, July 2 and 4, and August 15; in 2017 on May 30; and in 2018 on March 19 and May 7. FAC ¶¶ 42-44. For the services provided on May 30, 2017 and May 7, 2018, Cigna provided a written Explanation of Benefits ("EOB") letter to Hott stating "HEALTH CARE PROFESSIONAL: DO NOT BILL THE PATIENT FOR THE MULTIPLAN DISCOUNT THROUGH MULTIPLAN." FAC ¶ 45. For the services provided on March 19, 2018, the Provider Portal Pricing Summary stated "Priced using the MultiPlan Network and the following provider; Jonathan S. Hott, MD." FAC ¶ 46.

This case arises because Dr. Hott was paid less than the Contract Rate when he allegedly provided "covered" medical services to eighteen patients enrolled in Benefit Programs administered by Cigna and whose insurance cards contained the MultiPlan logo. FAC ¶¶ 59, 62-163. In total, Hott alleges that he was underpaid not less than $900,000.00. FAC ¶ 61.

On March 31, 2022, Dr. Hott filed his First Amended Complaint to recover the amount owed alleging: (1) Breach of Contract against MultiPlan; (2) Breach of Implied Contract against Cigna; (3) Breach of Implied Warranty of Good Faith and

5

Fair Dealing against all Defendants; (4) Promissory Estoppel
against all Defendants; and (6) Quantum Meruit against all
Defendants. Dkt. No. 30. On August 15, 2022, Defendants each
moved to dismiss for failure to state a claim upon which relief
can be granted. Dkt. Nos. 37 & 39. Dr. Hott's opposition was
subsequently filed on October 17, 2022. Dkt. No. 47.

## DISCUSSION

I.   Legal Standards

"To survive a motion to dismiss, a complaint must plead
'enough facts to state a claim to relief that is plausible on
its face.'" Ruotolo v. City of New York, 514 F.3d 184, 188 (2d
Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 570 (2007)). A claim is plausible "when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009). This requires "more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action."
Twombly, 550 U.S. at 570 (citations omitted).

The court reviews a complaint liberally, drawing all
reasonable inferences in the plaintiff's favor and accepting as
true all factual allegations, except for any legal conclusions
couched as factual allegations. Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009); Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d

6

Cir. 2016). In deciding the motion to dismiss, the court may consider documents that are attached to the complaint, incorporated by reference to the complaint, or relied upon heavily such that they become integral to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002); DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

II.   Count I—Breach of Contract against MultiPlan

The First Amended Complaint states a claim for breach of contract against MultiPlan.

To state a claim for breach of contract under Arizona law,[1] a plaintiff must plead facts showing: "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." Hannibal-Fisher v. Grand Canyon Univ., 523 F. Supp. 3d 1087, 1093-94 (D. Ariz. 2021) (quotation marks and citations omitted). The key issue here is whether Hott plausibly alleged that MultiPlan breached the contract.

The First Amended Complaint alleges that the Agreement required MultiPlan "to reimburse Dr. Hott his Contract Rate for surgical and related medical services rendered by Dr. Hott to patients whose Benefit Programs elected to participate in the

---

[1] Pursuant to § 9.3 of the Agreement, the Agreement "shall be construed and governed in accordance with Federal laws and regulations, as well as the laws of the state in which health care services are rendered hereunder"—in this case, Arizona. Dkt. No. 38, Ex. 2-A (the Agreement) § 9.3.

MultiPlan program, as identified by the MultiPlan logo on the patients' insurance cards." FAC ¶ 172. MultiPlan breached the Agreement "by failing to ensure its Clients, including Cigna, reimbursed Dr. Hott for services rendered to S.A., S.C., J.C., P.D., D.F., V.G., L.K., R.K., M.L., S.M., W.M., M.M., R.P., J.R., B.R., D.S., R.S., and J.W., at the Contract Rate." FAC ¶ 175.

As evidence of the contractual promise that MultiPlan would require its clients to pay the Contract Rates, the First Amended Agreement cites the express language of the Agreement, stating that MultiPlan "has entered into agreements with Clients that specify that the right to access the Network, including access to the Contract Rate, shall be subject to the terms of this Agreement," FAC ¶ 34 (citing § 4.3 of the Agreement); that MultiPlan "will require Clients and its Users to use the Contract Rate agreed to in this Agreement solely for Covered Services rendered to Participants covered under a Program which utilizes the Network," FAC ¶ 35 (citing § 4.7 of the Agreement); that participating providers cannot balance bill the patient beyond the patient's Deductible and/or Co-insurance in exchange for payment of the Contract Rate, FAC ¶ 36 (citing § 5.4 of the Agreement). Hott thus plausibly pleads that the Agreement created an obligation that MultiPlan breached when it failed to ensure that Cigna paid the Contract Rates.

Whether the terms of the MultiPlan Handbooks nullify the alleged obligations created by those provisions in the Agreement, as MultiPlan argues they do, is outside the scope of this Motion because the Handbooks were not incorporated by reference in, heavily relied upon by, or integral to the Complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (on a motion to dismiss, the court can only consider documents "incorporated by reference" in the complaint or "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.").

III.   Count II-Breach of Implied Contract against Cigna

The First Amended Complaint fails to state a claim against Cigna for breach of an implied contract.

An implied in fact contract requires the same elements as an express contract-offer, acceptance, meeting of the minds, and consideration-and the only difference is "the parties' manifestation of assent is implied." Donaldson v. McNew, No. 1 CA-CV 09-0689, 2011 WL 2464204, at *4 (Ariz. Ct. App. June 21, 2011). Thus, implied in fact contracts are created by "'conduct rather than words to convey the necessary assent and undertakings.'" Griffey v. Magellan Health Inc., 562 F. Supp. 3d 34, 50 (D. Ariz. 2021) (citation omitted). Whether such mutual assent exists is "resolved by consideration of objective

9

evidence, 'not the hidden intent of the parties.'" <u>Turley v. Beus</u>, No. 1 CA-CV 15-0107, 2017 WL 410976, at *5 (Ariz. Ct. App. Jan. 31, 2017) (citation omitted).

The First Amended Complaint does not plausibly allege Cigna manifested assent to pay the Contract Rate for the services provided to the eighteen patients disputed here. It alleges the existence of an implied contract based on Cigna's "express representations, and course of conduct, that they would pay the Contract Rate to Dr. Hott for medical services provided to insureds whose plan was in the MultiPlan Savings Program." FAC ¶ 178. Those express representations include Cigna placing the MultiPlan logo on the insurance cards presented to Dr. Hott by the patients at issue and Cigna's marketing communications to its insureds that it participated in MultiPlan's Complementary Provider Network. FAC ¶¶ 180, 182. The course of conduct relied on is the fact that on 27 other occasions, before, during, and after the occurrence of the claims at issue here, Cigna paid Hott the Contact Rate for services performed on other patients whose insurance cards have the MultiPlan logo and, on certain occasions, provided an Explanation of Benefits acknowledging the MultiPlan pricing structure. FAC ¶¶ 40-48, 181.

But, Dr. Hott alleges no facts concerning the applicability of the Contract Rates to the specific services performed on the patients at issue here beyond the allegation that Cigna agreed,

10

in general, to pay the Contract Rates for covered services. The inclusion of the MultiPlan logo on the Cigna insurance card does not show that Cigna agreed to pay the Contract Rate for every procedure performed on a patient who possesses that card. Atl. Neurosurgical Specialists, P.A. v. MultiPlan, Inc., 20 Civ. 10685 (LLS), 2022 WL 158658, at *7 (S.D.N.Y. Jan. 18, 2022). Nor do the representations on Cigna's website concerning its affiliation with MultiPlan, which explicitly caution that the discounts potentially available through MultiPlan "are not guaranteed." Dkt. No. 41 ("Declaration of E. Evans Wohlforth, Jr."), Ex. A.

Cigna's course of dealing and "payment history on other claims does not provide any evidence of their intent to agree to pay the contract rates for the procedures under dispute here." Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc., No. 20 Civ. 10685 (LLS), 2023 WL 160084, at *5 (S.D.N.Y. Jan. 11, 2023). "A history of paying the rate on some claims does not amount to giving binding assent to always pay the Contract Rate." Id. Especially in light of the fact that Hott, per the Agreement he entered into with MultiPlan, knew that Cigna had a "right to access" the Network, but not an obligation to do so. FAC ¶ 34 (citing § 4.3 of the Agreement).

Because the allegations are conclusory, the First Amended Complaint fails to state a claim and the claim against Cigna is

11

dismissed. Amendment is futile because "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." <u>Dakota Territory Tours ACC v. Sedona-Oak Creek Airport Auth. Inc.</u>, 383 F. Supp. 3d 885, 899 (D. Ariz. 2019).

IV.   <u>Count III-Breach of Implied Warranty of Good Faith and Fair Dealing</u>

The First Amended Complaint fails to state a claim for breach of the implied covenant against either defendant.

Under Arizona law, a covenant of good faith and fair dealing is implied in every contract, meaning "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." <u>Maleki v. Desert Palms Prof'l Props., LLC</u>, 214 P.3d 415, 421 (Ariz. Ct. App. 2009). This covenant is breached when a party either exercises "express discretion in a way inconsistent with a party's reasonable expectations" or acts "in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." <u>Bike Fashion Corp. v. Kramer</u>, 46 P.3d 431, 435 (Ariz. Ct. App. 2002). "A party enjoys discretion in the relevant sense when the express terms of the contract do not specify how a party is to behave in all circumstances." <u>Id.</u> at 435 n.3.

No covenant of good faith and fair dealing can be implied in a way that would obliterate a right expressly given under the written contract. Id. A party seeking to invoke the covenant must therefore allege more than a direct breach of an express contractual obligation. Aspect Sys., Inc. v. L5am Rsch. Corp., No. 06-1620-PHX-NVW, 2006 WL 2683642, at *3 (D. Ariz. Sept. 16, 2006) ("Because Plaintiff has not explained how Defendants have breached the implied covenant other than through the breach of an express contractual term, Plaintiff's argument fails.").

A. *Against MultiPlan*

The First Amended Complaint states "MultiPlan failed to enforce Paragraph 4.7 of the Provider Agreement, where it 'will require Clients and its Users to use the Contract Rate.'" FAC ¶ 189. This is the same allegation in support of Hott's claim for breach of contract and as such the claim is duplicative.

In the alternative, Hott argues that the First Amended Complaint pleads that the Agreement endowed discretion on MultiPlan to choose whether or not to enforce their Client's right to access the Network, and in turn, whether or not to ensure that Dr. Hottwas paid the Contract Rates. He alleges MultiPlan exercised that discretion in a way that was inconsistent with his expectations.

The First Amended Complaint does not state a claim that MultiPlan breached the covenant through its exercise of

13

discretion. It does not show that Hott can prove that the
Agreement endowed MultiPlan with the discretion to decide when
to enforce the Contract Rates. Hott does not cite, and the Court
likewise cannot find, any portion of the Agreement that grants
MultiPlan discretion. The Agreement dictates how MultiPlan is to
act in all circumstances, that is to require its clients "use
the Contract Rates agreed to in this Agreement solely for
Covered Services rendered to Participants covered under a
Program which utilizes the Network." FAC ¶ 35.

Because the Agreement dictates how MultiPlan is to act in
all circumstances and devoids the PPO of any discretion in
enforcing the applicability of the Contract Rates, leave to
amend would be futile. Owner-Operator Indep. Drivers Ass'n v.
Pac. Fin. Ass'n, Inc., 388 P.3d 556, 562-63 (Ariz. Ct. App.
2017) ("denial of a motion to amend is proper if the amendment
would be futile"). The claim against MultiPlan for breach of the
implied covenant of good faith and fair dealing is dismissed
with prejudice.

B. *Against Cigna*

"While every contract contains implied covenants of good
faith and fair dealing, such covenants presume the existence of
a valid contract." Norman v. State Farm Mut. Auto. Ins. Co., 33
P.3d 530, 537 (Ariz. Ct. App. 2001). Because there is no
contract between Hott and Cigna, there is no covenant that Cigna

14

could have allegedly breached. Accordingly, the claim is dismissed, and leave to amend is denied as futile.

   V.   Count IV-Promissory Estoppel

   To state a claim for promissory estoppel under Arizona law, a plaintiff must allege facts demonstrating that: "(1) Defendant made a promise to Plaintiff; (2) Defendant should have reasonably foreseen that Plaintiff would rely on that promise; (3) Plaintiff actually relied on that promise to his detriment; and (4) Plaintiff's reliance on the promise was justified." Clayton v. HSBC Bank USA, No. CV-17-01464-PHX-SPL, 2018 WL 1586649, at *3 (D. Ariz. Mar. 31, 2018). As to the fourth element, Arizona courts have consistently recognized that "[r]eliance is justified when it is reasonable, but is not justified when knowledge to the contrary exists." Higginbottom v. State, 51 P.3d 972, 977 (Ariz. Ct. App. 2002).

   A. *Against MultiPlan*

   Hott alleges that MultiPlan made a promise "to enforce . . . the Contract Rate in the Provider Agreement for services rendered" to the eighteen patients at issue here. FAC ¶ 194. That promise is evidenced by the terms of the Agreement. See FAC ¶¶ 34-36. He further plausibly alleges MultiPlan should have known he would rely upon that promise and that he actually did so to his detriment when he performed medical services for

15

patients who had an insurance card with the MultiPlan logo but was not compensated at the Contract Rates. FAC ¶¶ 195-96.

MultiPlan argues that Hott's reliance was not justified because the plain language of the Agreement contradicts Hott's characterization of the promise. But, the fact that the parties have different interpretations of the obligations set forth in the Agreement does not mean, at this stage, that Hott's reliance on his interpretation of the Agreement was unjustified, especially when the Court finds his reading of the Agreement to be plausible.

The First Amended Complaint sufficiently states a claim of promissory estoppel against MultiPlan and accordingly Multiplan's motion to dismiss Count IV is denied.

B. *Against Cigna*

Cigna argues that the First Amended Complaint fails to state a claim for promissory estoppel because Hott cannot demonstrate that Cigna made a clear promise to pay the Contract Rate for the procedures received by these eighteen patients. In reply, Hott argues that the pleadings allegations, taken together, concerning Cigna's payment of the Contract Rate for procedures done on other patients whose cards featured the MultiPlan logo; Cigna's express representations through its EOBs; and, Cigna's language on its website create a clear and definite promise from Cigna to Dr. Hott.

16

But Hott fails to explain how a course of dealing with other patients and marketing materials with express disclaimers that the Contract Rates will not always apply are sufficient to demonstrate that Cigna made an unambiguous promise to Hott sufficient to support Hott's promissory estoppel claim. See Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc., No. 20 CIV. 10685 (LLS), 2023 WL 160084, at *6 (S.D.N.Y. Jan. 11, 2023)("The placement of the MultiPlan logo on the Cigna and United insurance cards and the statements made on Cigna's and United's websites do not mean Cigna and United promised to pay the Contract Rates for H.I.'s, M.D.'s, and C.F.'s procedures."); see also Bright LLC v. Best W. Int'l Inc., No. CV-17-00463-PHX-ROS, 2018 WL 4042122, at *4 (D. Ariz. July 27, 2018) (dismissing plaintiff's claim for promissory estoppel when the evidence of a promise was communications with a third-party and not defendant); Valles v. Pima Cnty., 776 F. Supp. 2d 995, 1006 (D. Ariz. 2011), aff'd sub nom. Valles v. Cnty. of Pima, 502 F. App'x 651 (9th Cir. 2012)(finding no promise existed to support a claim for promissory estoppel when the alleged promise was a contract to which plaintiff was not a signatory).

Accordingly, the First Amended Complaint fails to allege a claim for promissory estoppel against Cigna and leave to amend is denied as futile. Wheeler v. City of Santa Clara, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the

proposed amendment is futile or would be subject to
dismissal.").

   VI.   <u>Count V-Quantum Meruit</u>

   The First Amended Complaint fails to state a claim for
quantum meruit.

   "Quantum meruit is actually a measure of damages, not a
remedy. . . The claim for relief is for unjust enrichment."
<u>Landi v. Arkules</u>, 835 P.2d 458, 467 (Ariz. Ct. App. 1992). To
plead a claim for unjust enrichment, the party must plausibly
allege that "(1) the other party was unjustly enriched at the
expense of the claimant, (2) the claimant rendered services that
benefitted the other party, and (3) the claimant conferred this
benefit under circumstances that would render inequitable the
other party's retention of the benefit without payment." <u>W.
Corr. Grp., Inc. v. Tierney</u>, 96 P.3d 1070, 1077 (Ariz. Ct. App.
2004).

       A. *Against MultiPlan*

   "[W]here there is a specific contract which governs the
relationship of the parties, the doctrine of unjust enrichment
has no application." <u>Brooks v. Valley Nat. Bank</u>, 548 P.2d 1166,
1171 (1976). Here, because the Agreement governs the
relationship between Dr. Hott and MultiPlan, the unjust
enrichment claim against MultiPlan cannot be sustained. <u>See
Trustmark Ins. Co. v. Bank One, Arizona, NA</u>, 48 P.3d 485, 492

(Ariz. Ct. App. 2002), <u>as corrected</u> (June 19, 2002) (holding that because plaintiff could have pursued a breach of contract claim based on the contractual documents, the trial court correctly granted judgment as a matter of law dismissing the unjust enrichment claim).

Hott argues that an unjust enrichment claim can be brought in the alternative in conjunction with a breach of contract theory, especially in situations where if the contract is found to be invalid then the plaintiff would have no remedy to recover payment for services rendered. Dkt. No. 47 (Plaintiff Opp.) at 24. But Hott "is not seeking to pursue its unjust enrichment claim in the alternative; rather, it seeks to avoid possible contractual limitations on its recovery by resorting to an unjust enrichment cause of action." <u>Trustmark Ins. Co.</u>, 48 P.3d at 493. There is no risk of the Agreement being invalidated or of Hott being found to be the breaching party. The threat to recovery is the Court finding the Agreement does not impose a separate burden on MultiPlan to ensure its clients access the Contract Rates. A claim for unjust enrichment can not be sustained simply to allow Hott to hedge his bets in the event that the Agreement is interpreted against him.

The claim is dismissed with prejudice because amendment is futile.

B. *Against Cigna*

The First Amended Complaint alleges that Cigna "received the benefit of Dr. Hott's participation in MultiPlan's Complementary Provider Network and its treatment of the Cigna members in question, including but not limited to the collection of the Shared Savings Fees by and among Cigna, and MultiPlan's refusal to enforce Dr. Hott's Contract Rate." FAC ¶ 201.  The alleged benefit Cigna received from Hott's participation in MultiPlan includes Cigna's ability to associate with MultiPlan in its marketing and promotional materials. Dkt. No. 47 at 20. Cigna argues that the claim for unjust enrichment cannot survive because no benefit was conferred onto it by Hott.

The First Amended Complaint does not show that Cigna received a benefit from Hott. It contemplates a triangle of benefits: (1) that Cigna's patients received medical services from Hott; (2) that Cigna paid Hott for those services, albeit less than the allegedly required Contract Rates; and (3) that the patients allegedly paid Cigna a higher "Shared Savings Fee," a percentage of the difference between Hott's standard out-of-network amount and the amount Cigna actually paid to Hott, at the expense of underpaying Hott. At no point in this setup does Hott confer any benefits onto Cigna. Hott confers a benefit onto the patients by performing the medical services. Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.,

20

No. CV-20-02007-PHX-MTL, 2022 WL 2390948, at *6 (D. Ariz. July 1, 2022) (dismissing quantum meruit claim because plaintiff provided a benefit-medical treatment-to the plan members, not the defendant and the complaint was "devoid of any facts" to show that Cigna requested medical services from the plaintiff.) Any benefit conferred onto Cigna comes at the behest of its clients. See Western Corrections Group, Inc. v. Tierney, 96 P.3d 1070, 1077 (Ariz. Ct. App. 2004) (affirming dismissal of quantum meruit claim where it was evident that the plaintiff did not confer a benefit).

Hott also argues that Cigna benefited from his participation in MultiPlan's network when Cigna referenced MultiPlan in its marketing and promotional materials. As this Court has found in an analogous case, "again the party conferring the benefit is not [plaintiff]. In this scenario, MultiPlan is the entity conferring the benefit of association. That benefit would continue to exist whether or not [plaintiff] was a provider in the MultiPlan Network." Atl. Neurosurgical Specialists, P.A. v. Multiplan, Inc., No. 20 CIV. 10685 (LLS), 2023 WL 160084, at *8 (S.D.N.Y. Jan. 11, 2023).

The claim for quantum meruit is dismissed against Cigna with prejudice as "any amendment to this claim would be futile because [Hott] cannot allege that it conferred a benefit to Cigna." See Physicians Surgery Ctr. of Chandler v. Cigna

Healthcare Inc., No. CV-20-02007-PHX-MTL, 2022 WL 2390948, at *6

(D. Ariz. July 1, 2022).

## CONCLUSION

Cigna's Motion to Dismiss is granted. All claims against it

are dismissed, with prejudice.

The Motion to Dismiss brought by the party which entered

into an agreement with Hott, MultiPlan, is denied in part as to

Count I (Breach of Contract) and Count IV (Promissory Estoppel)

and is granted in part, with prejudice, as to Count III (Breach

of the Implied Warranty of Good Faith and Fair Dealing) and

Count V (Quantum Meruit).

So Ordered.

Dated: January 13, 2023
       New York, New York

_Louis L. Stanton_
LOUIS L. STANTON
U.S.D.J.